KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
State Bar No. 227108
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5781
 Fax:  (415) 703-5843
 E-mail:  Jose.ZelidonZepeda@doj.ca.gov
*Attorneys for Defendants Dr. Tootell, Dr. Grant, Dr. Jones, Dr. Matan, Lt. Arnold, and Sgt. Seman*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **JOE ABBOTT,**<br><br>Plaintiff,<br><br>v.<br><br>**E. TOOTELL, et al.,**<br><br>Defendants. | C 11-0183 LHK (PR)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge       The Honorable Lucy H. Koh<br>Action Filed:   January 12, 2011 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

Introduction ............................................................................................................................... 1
Factual background .................................................................................................................. 1
      A.    Abbott's allegations regarding medical treatment. ..................................... 1
      B.    Abbott's administrative grievances regarding his medical treatment. ........ 3
Legal standard .......................................................................................................................... 5
Argument .................................................................................................................................. 6
      I.    Abbott's claim against defendant medical staff fails to state a claim under
the caselaw because it amounts to a mere difference of medical opinion. ............. 6
      II.    The Court should dismiss Abbott's claim against defendants Seman and
Arnold because Abbott did not exhaust administrative remedies against
them. ...................................................................................................................... 8
Conclusion ............................................................................................................................... 11

i

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ............................................................................................................... 5

*Caviness v. Horizon Comty. Learning Ctr.*
   590 F.3d 806 (9th Cir. 2010) ................................................................................................. 5

*Coakley v. Murphy*
   884 F.2d 1218 (9th Cir. 1989) ............................................................................................... 5

*Estelle v. Gamble,*
   429 U.S. 97 (1976) ............................................................................................................ 6, 7

*Franklin v. State of Or., State Welfare Div.*
   662 F.2d 1337 (9th Cir. 1981) ............................................................................................... 6

*Griffin v. Arpaio*
   557 F.3d 1117 (9th Cir. 2009) ........................................................................................ 9, 10

*Hallett v. Morgan*
   296 F.3d 732 (9th Cir. 2002) ............................................................................................ 6, 7

*In re Cutera Securities Litig.*
   610 F.3d 1103 (9th Cir. 2010) ............................................................................................... 5

*Jackson v. McIntosh*
   90 F.3d 330 (9th Cir. 1996) ................................................................................................... 6

*Lee v. City of Los Angeles*
   250 F.3d 668 (9th Cir. 2001) ................................................................................................. 5

*Marella v. Terhune*
   568 F.3d 1024 (9th Cir. 2009) ............................................................................................... 8

*O'Guinn v. Lovelock Correctional Center*
   502 F.3d 1056 (9th Cir. 2007) ............................................................................................. 10

*Papasan v. Allain*
   478 U.S. 265 (1986) ............................................................................................................... 5

*Provencio v. Vazquez*
   258 F.R.D. 626 (E.D. Cal. 2009) .......................................................................................... 8

ii

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Roth v. Garcia Marquez*
   942 F.2d 617 (9th Cir. 1991) ............................................................................................... 5

*Sanchez v. Vild*
   891 F.2d 240 (9th Cir. 1989) ............................................................................................ 6, 7

*Teahan v. Wilhelm*
   481 F. Supp. 2d 1115 (S.D. Cal. 2007) ................................................................................ 1

*Wyatt v. Terhune*
   315 F.3d 1108 (9th Cir. 2003) ............................................................................................. 5

**STATUTES**

28 United States Code
   § 1915A .................................................................................................................................. 1

42 United States Code
   § 1983 ........................................................................................................................... 1, 6, 8
   § 1997e(a) .............................................................................................................................. 8

California Code of Regulations, Title 15
   § 3084.1 (2009) ..................................................................................................................... 9
   § 3084.2(a) (2009) ................................................................................................................. 9
   § 3084.6(c) (2009) ............................................................................................................ 9, 10

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment ................................................................................................... 1, 2, 3, 6

**COURT RULES**

Federal Rules of Civil Procedure
   Rule 12 .................................................................................................................................. 1
   Rule 12(b) ............................................................................................................................. 5
   Rule 12(b)(6) ..................................................................................................................... 1, 5

iii

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

TO PLAINTIFF JOE ABBOTT:

TAKE NOTICE THAT Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's complaint fails to state a claim on which relief can be granted.[1]  This motion is based on the complaint, the documents attached to the complaint, the attached memorandum of points and authorities, and the attached declaration.

Defendants Seman and Arnold also move to dismiss for Plaintiff's failure to exhaust administrative remedies, as the Prison Litigation Reform Act requires.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is a prisoner civil rights action under § 1983.  Plaintiff Joe Abbott is an inmate currently housed at San Quentin State Prison.  (Doc. 1 at ¶ 3.)  Abbott alleges generally that correctional and medical staff at San Quentin were deliberately indifferent to his medical needs.  On March 21, 2011, the Court screened the complaint and found that, liberally construed, Abbott's allegations stated a claim under the Eighth Amendment.  (Doc. 6.)

Abbott's complaint fails to state a claim against Defendants Tootell, Grant, Jones, and Matan because his allegations amount to, at most, a difference of medical opinion about his treatment.  Moreover, Abbott did not properly exhaust administrative remedies for his claim against Defendants Seman and Arnold.  Accordingly, this Court should dismiss the complaint.

### FACTUAL BACKGROUND[2]

A.  **Abbott's Allegations Regarding Medical Treatment.**

Abbott is a prisoner currently housed at San Quentin State Prison.  (Doc. 1 at ¶ 3.)[3]  On September 14, 2006, while playing basketball, Abbott tore his right Achilles tendon.  (*Id.* ¶ 10.)  Defendant J. Matan, who is an orthopedic specialist doctor at San Quentin, examined Abbott the

---

[1] Although the Court already screened the complaint under 28 U.S.C. § 1915A and found that it states a cognizable claim, this finding does not foreclose Defendants' right under Rule 12 to file a motion to dismiss. *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

[2] These factual allegations are derived from Abbott's complaint and documents attached to it.  Defendants do not concede the accuracy or truthfulness of these allegations, and set them forth solely for purposes of this motion.

[3] Citations to the complaint and exhibits are to the page numbers assigned by the Court's ECF system.

1

1  same day. (*Id.* ¶ 11.) According to documents attached to his complaint, Abbott also received an
2  X-ray that day. (Doc. 2 at 49.) Dr. Matan placed a cast on Abbott's right foot. (Doc. 1 at ¶ 11.)

3        A few weeks after Abbott injured his foot, prison staff brought him to the emergency room
4  at the Novato Hospital when Abbott complained of pain and about the cast being too tight. (Doc.
5  1 at ¶ 12.) During this visit, Abbott received an intravenous drip, pain medication, and an X-ray
6  of his right Achilles tendon. (*Id.*) Staff at the hospital also removed the cast, and allegedly told
7  Abbott that his Achilles injury was not healing properly. (*Id.*) Abbott was also allegedly told that
8  he should have undergone surgery after the right foot injury. (*Id.*) The hospital staff ultimately
9  gave Abbott a splint and discharged him back to San Quentin. (*Id.*)

10       Between December 14 and December 21, 2006, Defendant Matan again saw Abbott at San
11 Quentin. (Doc. 1 at ¶ 13.) Dr. Matan ordered a cast brace for Abbott. (*Id.*) Dr. Matan also
12 examined Abbott on February 22, 2007, by which point Abbott still had not received the cast
13 brace previously ordered for him. (*Id.*) On April 8, 2008, Dr. Matan performed surgery on
14 Abbott's right knee. (Doc. 1 at ¶ 14.) Further, Dr. Matan issued Abbott a "chrono" designating
15 him to be handcuffed in waist restraints instead of being handcuffed behind his back. (*Id.* ¶ 15.)
16 On or around January 23, 2009, Dr. Matan performed a second surgery on Abbott's right
17 shoulder. (*Id.* ¶ 14.)

18       On March 20, 2009, prison staff moved Abbott to the Adjustment Center. (Doc. 1 at ¶ 17.)
19 After Abbott was moved, Dr. Grant allegedly rescinded all of his medical "chronos" without
20 examining him. (*Id.*) Although Dr. Grant purportedly nullified Abbott's "chrono" for waist
21 restraints, he authorized him for modified handcuffs. (*Id.*) Subsequently, on June 4, 2009,
22 Abbott claims Dr. Matan reissued his "chronos" for handcuffing in waist restraints, also providing
23 that Abbott should not be made to kneel when being placed in leg irons, and authorizing an ankle
24 wrap on his right Achilles. (*Id.* ¶¶ 16, 18.) On June 5, 2009, Abbott alleges that Dr. Grant
25 rescinded Dr. Matan's chronos, purportedly at the direction of Defendants Seman and Arnold.
26 (*Id.* ¶ 19.) Defendant Seman is a correctional sergeant at San Quentin, and Defendant Arnold is a
27 correctional lieutenant. (*Id.* ¶¶ 8, 9.)
28 / / /

2

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

On October 23, 2009, Dr. Grant allegedly examined Abbott, and refused him various unspecified medical items Abbott claims he needed. (Doc. 1 at ¶ 20.) Correctional staff moved Abbott out of the Adjustment Center on December 18, 2009, and placed him back in the Condemned Row housing unit. (*Id.* ¶ 21.) On December 31, 2009, Abbott complained to a nurse of shoulder, knee, and Achilles pain, and the nurse set up an appointment with Dr. Jones. (*Id.* ¶ 22.) Abbott met with Dr. Jones on January 24, 2010. (*Id.* ¶ 24.) During the examination, Abbott requested that his shoulder be X-rayed, and that Dr. Jones help him get his cane and walking boot back. (*Id.*) Dr. Jones denied these requests, but she referred Abbott to a physical therapist for evaluation. (*Id.*) On this date, Abbott also purpotedly became aware that Defendants Arnold and Seman had confiscated his medical boot and walking cane. (*Id.*)

A physical therapist evaluated Abbott on February 2, 2010. (Doc. 1 at ¶ 25.) Abbott claims that the physical therapist recommended that staff give him a medical boot and a walking cane, and that unspecified medical chronos be reissued to him. (*Id.*) On February 18, 2010, Dr. Jones again denied Abbott's request for a medical boot and a walking cane. (*Id.* ¶ 26.) Dr. Jones also continued Abbott on modified cuffs, refusing his request for waist chain cuffs. (*Id.*) In sum, Dr. Jones concluded that Abbott was medically able to partially rotate his shoulder, and thus modified cuffs sufficed. (*Id.*) Abbott claims this conclusion conflicted with Dr. Matan's diagnosis. (*Id.*)

Dr. Jones saw Abbott again approximately six to eight weeks later. (Doc. 1 at ¶ 27.) At this point, Dr. Jones issued Abbott a waist chain chrono, as Abbott previously requested. (*Id.*) Abbott also requested an X-ray of his shoulder, but Dr. Jones refused this request. (*Id.*) Eventually, Abbott contends, another doctor ordered X-rays, which showed a separation of his shoulder. (*Id.* ¶ 29.) This doctor also ordered other unspecified tests that Dr. Jones and Dr. Grant had allegedly refused. (*Id.*)

**B.    Abbott's Administrative Grievances Regarding His Medical Treatment.**

According to Abbott, he submitted eight administrative grievances within the prison system regarding his medical care. Abbott attaches these eight grievances as exhibits A through H to his complaint. These are summarized in the table below, arranged by chronological order according to the date they were submitted.

3

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

| Exhibit | Log Number | Allegations | Date Completed |
|---|---|---|---|
| C | SQ-06-2967 | On 9/14/06, injured his Achilles tendon; complains that MRI was not completed | 2/22/07 |
| E | SQ-09-13717 | 2/23/09 grievance requesting renewal of ice "chrono" issued by Dr. Matan | 3/24/10 |
| D | SQ-09-00762 | 6/7/09 grievance requesting use of waistchains, a knee brace, ankle wrap, thermals, high top shoes, and a cervical neck pillow; also requests that staff stop using leg chains | 9/8/09 |
| B | SQ-09-01754; SQ-10-00020 | 11/18/09 grievance complaining that staff at Adjustment Center denied him access to law library | 6/24/10 |
| G | SQ-10-00193 | 11/22/09 grievance requesting to have shoulder examined by a doctor and to be cuffed "in a manner which does not further injure or cause further pain" to shoulder | 8/20/10 |
| F | SQ-09-01805 | 11/29/09 grievance complaining about a sign that correctional staff placed outside his cell regarding manner of cuffing | 6/10 |
| H | SQ-11-09-16634 | Grievance re: Dr. Matan's 12/3/09 examination of Abbott's right shoulder; exam showed Abbott could not put hand behind shoulder, but Dr. Grant allegedly told Dr. Matan to not write any "chronos" for shoulder regardless of examination results | 10/27/10 |
| A | SQ-10-00716 | 4/24/10 grievance re: Adjustment Center staff's alleged removal of Abbott's walking cane and boot/brace on 3/21/09; also complains of leg restraints digging into Achilles tendon | 8/19/10 |

Despite his clear understanding of the inmate grievance process, Abbott did not submit a grievance regarding his allegations against Defendants Seman and Arnold. (Decl. J. Zelidon-Zepeda Supp. Mot. To Dism., Ex. 1.) In fact, according to the computerized records maintained by San Quentin, Abbott submitted only one grievance around June 5, 2009, the date Defendants Seman and Arnold allegedly rescinded his medical chronos. (*Id.*) This was grievance log number SQ-09-00762, which was received by the prison on June 11, 2009. (*Id.*) As noted in the table above, log number SQ-09-00762 pertains to Abbott's requests regarding waist chains.

Moreover, although Abbott alleges that on January 24, 2010 he found out that Defendants Seman and Arnold withheld his medical boot and walking cane, he did not submit a grievance between January 21 and May 7, 2010. (Decl. J. Zelidon-Zepeda Supp. Mot. to Dism., Ex. 1.)

///

4

Defs.' Mot. to Dismiss; Mem. of P. & A.'s (C 11-0183 LHK (PR))

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted.  Although a complaint attacked by a motion to dismiss does not need "detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).  A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible in its face." *In re Cutera Securities Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted).

In ruling on a motion under Rule 12(b)(6), this Court must take the factual allegations of the complaint as true.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  But if a complaint "is accompanied by attached documents, the court is not limited by the allegations contained in the complaint.  These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991) (citation omitted).  If the allegations of the complaint are refuted by an attached document, the court need not accept the allegations as true.  *Id.*  Further, in ruling on a motion to dismiss, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comty. Learning Ctr.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).  If a complaint's defects are not curable, the court should dismiss without leave to amend.  *See Coakley v. Murphy*, 884 F.2d 1218, 1222 (9th Cir. 1989).

Defendants Seman and Arnold also move to dismiss the claim against them for failure to exhaust administrative remedies.  In the Ninth Circuit, these motions are properly brought as unenumerated Rule 12(b) motions.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  In assessing a motion to dismiss for failure to exhaust, the Court can look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1120.  Abbott may provide evidence to the Court to dispute that presented by Defendants.  *Id.* at 1120 n.14.

/ / /

5

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

# ARGUMENT

## I. ABBOTT'S CLAIM AGAINST DEFENDANT MEDICAL STAFF FAILS TO STATE A CLAIM UNDER THE CASELAW BECAUSE IT AMOUNTS TO A MERE DIFFERENCE OF MEDICAL OPINION.

Abbott's allegations of deliberate indifference fail to state a claim upon which relief can be granted against Defendants Tootell, Matan, Grant, and Jones. At heart, Abbott's legal claims against these medical professionals amount to a difference of opinion regarding his medical treatment. Such claims are not viable under the caselaw.

The Supreme Court has instructed that "mere medical malpractice" does not violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Instead, prison officials violate the Eighth Amendment when they exhibit "deliberate indifference to serious medical needs." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citation omitted). A prisoner-plaintiff raising a deliberate indifference claim must establish that the defendants deprived him of the "minimal civilized measure of life's necessities," and that they acted with deliberate indifference in doing so. *Id.* (citations omitted). The conduct of prison officials must cause unnecessary and wanton infliction of pain for it to violate the Eighth Amendment. *Id.* But ultimately, the Eighth Amendment "requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable." *Id.* at 745 (citation omitted).

Here, Abbott's claims against the prison medical personnel fail because they are merely his disagreement with his treatment. Under the caselaw, a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). "In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). As the Supreme Court has noted, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Gamble*, 429 U.S. at 107.

6

Defs.' Mot. to Dismiss; Mem. of P. & A.'s (C 11-0183 LHK (PR))

Abbott's allegations here are quintessentially disagreements with his medical treatment. For example, Abbott complains that Dr. Grant denied him ice, that Dr. Matan did not authorize immediate surgery for his ankle injury, and that Dr. Jones and Dr. Grant refused his requests for a waist chains "chrono." (Doc. 1 ¶¶ 14, 11, 17, 20.) Dr. Grant also allegedly rescinded Abbott's previous medical chronos, (Doc. 1 ¶ 19), and Dr. Jones purportedly denied Abbott's "A.D.A. claim" and disregarded his medical chronos. (*Id.* ¶¶ 20, 26.) All these decisions are matters of medical judgment, which the Supreme Court has held do not present a constitutional question. *Gamble*, 429 U.S. at 107. This is particularly true here given the extensive medical treatment Abbott concedes he received, including at least three surgeries, medication for pain and other conditions, and diagnostic procedures such as X-rays. In light of this treatment, Abbott's complaint fails as a matter of law because he has not alleged that Defendants deprived him of the "minimal civilized measure of life's necessities." *Hallett*, 296 F.3d at 744 (citation omitted).

Abbott's allegations that certain doctors prescribed or suggested particular treatment that other doctors disagreed with or disregarded do not change this analysis. For example, Abbott alleges that someone at Novato Hospital told him he should have had surgery on his Achilles tendon when it was first injured, (Doc. 1 at ¶ 12), and that Dr. Matan recommended that he be given waist restraints instead of regular handcuffs, a recommendation that Dr. Grant disregarded. (*Id.* at ¶¶ 17, 19.) Dr. Jones also allegedly disregarded the recommendations of a physical therapist who examined Abbott and allegedly recommended that he use a medical boot and a walking cane, and later denied Abbott's request for a shoulder X-ray. (*Id.* ¶¶ 26, 27.) In *Vild*, an inmate-plaintiff alleged that a prison doctor advised him that surgery was necessary for his medical condition. 891 F.2d at 241. Other prison medical personnel provided various forms of treatment for the inmate's medical condition, but did not authorize surgery. *Id.* at 241-42. The Ninth Circuit held that the plaintiff had at most alleged a difference of medical opinion about his treatment, and thus his claim failed because it did not meet the standard for deliberate indifference to serious medical needs. *Id.* at 242.

Abbott's claim against Defendant Dr. Tootell also fails because he has not met the legal standard for supervisory liability. Abbott alleges that Dr. Tootell "is responsible for the medical

7

care of all inmates" at San Quentin, and that she also supervises, directs, and trains the medical staff at the prison, and is responsible for assuring that medical staff provide proper treatment. (Doc. 1 at 4.)[4] Under the caselaw, to state a valid claim for supervisory liability for deliberate indifference to medical needs, Abbott must allege that: 1) he had a serious medical need; 2) defendants were deliberately indifferent to that need; 3) because of the policies Dr. Tootell established; 4) while acting under color of state law; and that 5) the policies were so deficient as to be the "moving force" behind the violation of Abbott's rights. *Provencio v. Vazquez*, 258 F.R.D. 626, 634 (E.D. Cal. 2009). For the reasons noted above, Abbott's allegations do not establish that Defendants were deliberately indifferent to his serious medical needs. Moreover, Abbott does not allege that Dr. Tootell instituted deficient policies, or that such deficient policies were the "moving force" behind the violation of his rights. (*See generally* Doc. 1.) Thus, he has failed to "connect how [Defendant Tootell's] alleged policy caused individuals to act in deliberate indifference" to his serious medical needs. *Provencio*, 258 F.R.D. at 635. Accordingly, the Court should dismiss the claim against Dr. Tootell.

## II. THE COURT SHOULD DISMISS ABBOTT'S CLAIM AGAINST DEFENDANTS SEMAN AND ARNOLD BECAUSE ABBOTT DID NOT EXHAUST ADMINISTRATIVE REMEDIES AGAINST THEM.

Additionally, Abbott's claims against Defendants Seman and Arnold fail because Abbott did not exhaust available administrative remedies against them.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Proper exhaustion means that an inmate must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (citation omitted). The Ninth Circuit holds that an

---

[4] Dr. Tootell's only personal involvement with Abbott appears to have been her decision to discontinue Abbott's medical ice "chrono" on February 23, 2009. (Doc. 1 at ¶ 14.) It is unlikely that ice is a "serious medical need," particularly given the extensive treatment and medication Abbott received.

8

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

inmate grievance suffices if it alerts the prison officials to the nature of the wrong for which the inmate seeks redress. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

The California Department of Corrections and Rehabilitation (CDCR) has an inmate grievance process. Cal. Code Regs. tit. 15, § 3084.1 (2009).[5] To begin this process, an inmate must fill out a simple form made available to all inmates. *Id.* Under the guidelines, an inmate grievance must be submitted "within 15 working days of the event or decision being appealed." Cal. Code Regs. tit. 15, § 3084.6(c) (2009). A proper grievance must use CDCR Form 602, and describe the problem and the action requested. Cal. Code Regs. tit. 15, § 3084.2(a) (2009).

Here, Abbott did not exhaust administrative remedies for his deliberate indifference claim against Defendants Seman and Arnold because he did not submit a grievance regarding his allegations that they somehow interfered with his medical treatment. Specifically, Abbott submitted only one grievance around June 5, 2009, the date Defendants Seman and Arnold allegedly rescinded his medical chronos. (Decl. J. Zelidon-Zepeda, Ex. 1.) This was grievance log number SQ-09-00762, which was received by the prison on June 11, 2009. (*Id.*) As noted in the table above, log number SQ-09-00762 pertains to Abbott's requests regarding waist chains; it does not mention Abbott's allegations that Defendants Seman and Arnold rescinded his medical chronos.

Abbott's complaint also alleges that Seman and Arnold "confiscated" his medical chronos and "interfered/delayed" with his medical needs on January 24, 2010. (Doc. 1 at ¶ 24.) Seman and Arnold purportedly did so "by withholding the use of plaintiff's medical boot and walking cane." (*Id.*) Yet, according to the prison records, Abbott did not submit a grievance regarding these allegations within fifteen calendar days of the events. (Decl. J. Zelidon-Zepeda, Ex. 1.) In fact, Abbott did not submit any grievances between January 24, 2010 and May 7, 2010. (*Id.*) The May 7, 2010 grievance, which was assigned log number SQ-10-00716, could not have exhausted the allegations against Defendants Seman and Arnold because it was not submitted within fifteen

---

[5] The California regulations governing inmate grievances were recently amended. Citations in this motion are to the regulations in effect at the time Abbott submitted his grievances.

9

Defs.' Mot. to Dismiss; Mem. of P. & A.'s (C 11-0183 LHK (PR))

days of the actions Abbott complains of. Cal. Code Regs. tit. 15, § 3084.6(c) (2009); *Woodford v. Ngo*, 548 U.S. 81, 86 (2001) (noting that an inmate's grievance may be rejected if submitted outside the deadlines).

In *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056 (9th Cir. 2007), the Ninth Circuit determined that an inmate failed to properly exhaust claims of improper mental health treatment where his grievance merely requested a lower bunk to accommodate the inmate's poor balance resulting from a previous brain injury. Because the grievance did not request mental health treatment, it could not have put prison officials on notice of the claims of improper mental health care. *Id.* at 1062. More recently, in *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit set forth the factual specificity required in an inmate grievance. In *Griffin*, the inmate alleged that his medical condition necessitated assignment to a lower bunk. *Id.* at 1118. After he fell from his bunk, he was assigned to a lower bunk but the prison subsequently reassigned him to an upper bunk. *Id.* After again falling from his bunk, Griffin submitted a grievance, stating that he had injured himself in the fall from his bunk, and requesting a ladder. *Id.* The Ninth Circuit held that the inmate's grievance did not exhaust his claim that staff disregarded his assignment to a lower bunk. *Id.* at 1121. The inmate's repeated demands for a ladder did not clarify his complaint that his lower bunk assignment had been disregarded. *Id.* In light of this, prison officials reasonably concluded that reassigning Griffin to a lower bunk solved his problems. *Id.* Ultimately, the court in *Griffin* determined that the inmate "did not provide enough information . . . to allow prison officials to take appropriate responsive measures." *Id.* (citation omitted).

Here, despite submitting eight difference inmate grievances regarding his complaints about the medical care he received, Abbott did not submit a timely grievance about Defendant Arnold and Seman's alleged actions. Accordingly, this Court should dismiss the claim against them, without prejudice.

/ / /

/ / /

/ / /

10

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

# CONCLUSION

For the reasons explained above, the Court should dismiss Abbott's claims against Defendants Tootell, Grant, Jones, and Matan, without leave to amend.  The Court should also dismiss the claim against Defendants Arnold and Seman, without prejudice.

Dated:  August 18, 2011

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

/s/  *Jose A. Zelidon-Zepeda*
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for Defendants Dr. Tootell, Dr. Grant, Dr. Jones, Dr. Matan, Lt. Arnold, and Sgt. Seman*

SF2011201138
20508556.doc

11

Defs.' Mot. to Dismiss; Mem. of P. & A.'s  (C 11-0183 LHK (PR))

# CERTIFICATE OF SERVICE

Case Name:   **J. Abbott v. Tootell, et al.**          No.   **C 11-0183 LHK (PR)**

I hereby certify that on **August 18, 2011**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

**DECLARATION OF JOSE A. ZELIDON-ZEPEDA SUPPORTING DEFENDANTS' MOTION TO DISMISS**

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. On **August 18, 2011**, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

**Joe Henry Abbott, F-14791**
**California State Prison - San Quentin**
**1 Main Street**
**San Quentin, CA 94964**
*Pro Se*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 18, 2011**, at San Francisco, California.

|  M. Thai  |  /s/ M. Thai  |
| :---: | :---: |
| Declarant | Signature |

20509666.doc